UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SALVATORE J. LaSCALA, DOUGLAS A. JANESE
and RICHARD J. MARINO, Individually, as members
of Local 280, and as participants and Trustees or former
Trustees of the Niagara-Genesee & Vicinity Carpenters
Local 280 Welfare Fund,

                                        Plaintiffs,

              -vs-                                                93-CV-982C(F)

SANTO S. SCRUFARI, Individually and as Plan Manager
of the Niagara-Genesee & Vicinity Carpenters Local 280
Welfare and Pension Funds,

                                        Defendant.

_____

APPEARANCES:   BURD & McCARTHY (TIMOTHY A. McCARTHY, ESQ., of Counsel),
               Buffalo, New York, for Plaintiffs.

               CHAMBERLAIN, D'AMANDA, OPPENHEIMER & GREENFIELD
               (MICHAEL T. HARREN, ESQ., of Counsel), Rochester, New York, for
               Defendant.


       On January 15, 2004, this court issued its findings of fact and conclusions of law

after trial finding that defendant Santo Scrufari, as Plan Manager of the Niagara-Genesee

& Vicinity Carpenters Local 280 Welfare and Pension Funds, breached his fiduciary duties

under ERISA sections 404(a)(1) and 406(b)(1) by paying himself unauthorized overtime

salary, and "compensation weighted" fringe benefits based on this inflated salary, from the

pay period ending March 26, 1989 to the pay period ending October 4, 1992.  Remaining

for determination is the amount of damages to be assessed as the result of these findings, in accordance with ERISA section 409(a).[1]

To address this issue, the court initially directed counsel to confer and advise as to the items of damages upon which agreement could be reached (*see* Item 202).  However, after receiving and reviewing the parties' various written proposals (*see, e.g.*, Items 204, 205, 206, 219, 222, and 224), it became apparent that the parties had taken increasingly divergent positions as to the proper measure of damages, with little room for compromise. On December 9, 2005, the court once again met with counsel in an attempt to resolve the damages issue and bring this longstanding matter to final judgment without the need for further costly litigation, but no accord could be reached.  The court then heard oral argument on the parties' proposals, and reserved decision.

The proposals are summarized briefly below, and the court's decision follows.

## A.    Defendant's Proposal

By letter dated October 14, 2004 (Item 219), defendant's counsel submitted his proposal for calculating damages as a function of (1) the unauthorized overtime salary Scrufari received during the relevant period, and (2) the corresponding Pension and Welfare Fund contributions made by his employer–*i.e.*, the Funds–during the same period.

---

[1]Section 409(a) provides, in pertinent part:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

-2-

The letter briefly explains the amounts reported, and the methodology for the calculations made, as reflected in eight pages of attached exhibits.

Page 1 of the exhibits shows the amount of overtime hours credited (770.4 hours) and the corresponding salary paid to Scrufari for the period from January 1, 1989 through December 27, 1992, totaling $28,866.90.  This document was prepared by the Funds' auditor.  As explained in counsel's letter, the Pension Fund and the Welfare Fund, as separate trusts, shared the cost of the Fund Manger's salary, with 60 percent attributed to the Welfare Fund ($17,320.00) and 40 percent attributed to the Pension Fund ($11,547.00).

Page 2, also prepared by the auditor, reflects calculations of Pension Fund and Welfare Fund contributions made during the same period and attributed to the overtime salary paid to Scrufari.  The totals are set forth as $6,894.58 in "Overtime Pension Contribution," and $8,346.41 in "Overtime Welfare Contribution."

Pages 3 and 4 report the Pension and Welfare Funds' investment earnings and returns for the period January 1, 1998 (Scrufari's retirement date) through December 31, 2003 (the approximate date of the court's decision after trial), as reflected in the actuarial valuation performed by O'Sullivan & Associates.

Page 5 represents defense counsel's calculation of damages to the Welfare Fund as the result of Scrufari's unauthorized overtime salary, plus interest, totaling $31,090.51. As explained in counsel's letter, interest was calculated for the period from June 30, 1992 to December 31, 1997, using the 1-year Treasury Bill judgment interest rates set forth at 28 U.S.C. § 1961.  Interest was calculated for the period from January 1, 1998 to

September 13, 2004, using the corresponding rates of interest actually earned by the Fund as reported by O'Sullivan.[2]

Page 6 represents defense counsel's calculation of damages to the Welfare Fund as the result of benefit contributions, plus interest calculated for the period from January 1, 1998 through September 13, 2004, totaling $11,491.23.[3] Based on these calculations, the combined total of damages representing unauthorized salary and corresponding benefit contributions attributable to the Welfare Fund is $42,581.74.

Page 7 represents defense counsel's calculation of damages to the Pension Fund as the result of unauthorized overtime salary, plus interest, totaling $20,337.11. Page 8 represents defense counsel's calculation of damages to the Pension Fund as the result of benefit contributions, plus interest, totaling $9,314.54. Based on these calculations, defendant submits that the combined total of damages representing unauthorized salary and corresponding benefit contributions attributable to the Pension Fund is $29,651.65, and that the grand total of damages attributable to both Funds is $72,233.39.

## B.    Plaintiffs' Proposal

By letter dated November 14, 2005 (Item 222), plaintiffs submitted their counter-proposal consisting of an eight-page letter and twenty-eight pages of attachments.[4] In

---

[2]The only explanation given for the application of the statutory interest rates for the 6/30/92 - 1/31/97 period, as opposed to the actual rates of return, is that "[w]e do not have the corresponding report from O'Sullivan for the preceding 5 year period." Item 219, p. 1.

[3]As noted in defense counsel's letter, interest was not calculated for Welfare or Pension Fund contributions made by the employer prior to Scrufari's retirement–*i.e.*, during the time the contributions remained in the Funds and earned (or lost) the returns earned (or lost) by the Funds.

[4]As explained in the letter of plaintiffs' counsel, it took some time to formulate a counter-proposal because, while the court had anticipated cooperation on the part of the Trustees, counsel was required to subpoena the Funds' records deemed necessary to evaluate the figures used in defendant's calculations.

essence, plaintiffs agree with respect to defense counsel's calculation of the total hours of Scrufari's overtime, the overtime salary paid, and the amount of the contributions that were made to each of the Funds as a result.  However, plaintiffs disagree with respect to the proper rates of investment return on those amounts, and the dates from which the rates of return should be calculated.  Plaintiffs also contend that damages should be assessed against the Pension Fund based on the actual dollar amounts Scrufari is taking in pension benefits with respect to the unauthorized overtime, rather than based on the amount of contributions made by the employer.

More specifically, plaintiffs' counsel has calculated the interest on both the overtime earnings and the associated benefits using the actual rates of return for all time periods as provided in O'Sullivan & Associates' actuarial valuation reports, rather than adopting defense counsel's application of the statutory 1-year Treasury bill rates for the period from June 30, 1992 to December 31, 1997.  Plaintiffs' counsel also points out that defendant's proposal employs a methodology for calculating the Funds' rates of investment return which differs in significant respect from the methodology used by the actuary.

By way of  example, counsel submits the following basic assumptions:

| Beginning of Year Assets | Investment Earnings | End of Year Assets | Simple Rate of Investment Return |
|---|---|---|---|
| $100,000 | $10,000 | $110,000 | 10% |

As reflected in his October 14, 2004 letter to the court, defense counsel has calculated the percentage rate of investment return by first determining the "Average Value" of beginning and end-of-year assets (using the above example: $105,000), and then dividing the

investment earnings by that figure (in the example: $10,000 ÷ $105,000 = .095 or 9.5%). Although not explained in greater detail anywhere in defendant's submissions, this methodology was apparently developed by defense counsel to account for net earnings and investment returns after deduction of fund management fees.

On the other hand, plaintiffs' counsel explains that the methodology employed by O'Sullivan (the actuary) takes into account not only administrative expenses but also amounts received by the Fund as employer contributions and paid out as pension or welfare benefits, resulting in a more reliable basis for determining the net investment return. Using the above example, and further assuming employer contributions of $6,000 and benefits (plus administrative expenses) of $12,000, the actuary would calculate the net return by reducing what would otherwise be his "contribution base" (*i.e.*, the beginning of year assets of $100,000) by half the payout (*i.e.*, $12,000 ÷ 2 = $6,000), and by increasing it by half the contributions ($6,000 ÷ 2 = $3,000). Thus, in our example:  $100,000 - $6,000 + $3,000 = $97,000. Assuming the same $10,000 investment return, the actuary would calculate a percentage return of 10.31% ($10,000 ÷ $97,000 = .1031 or 10.31%).

When applied to the figures set forth in the parties' submission, the deviation resulting from the different methods of calculating interest, when compounded year after year in calculating damages suffered by the Funds as a result of Scrufari's salary overpayments, is notable. When considered in conjunction with the difference between the statutory Treasury bill rate and the actual annual interest rates for the years 1992 through 1997, the deviation is significant.

For example, under plaintiffs' (and the actuary's) approach, the lump sum amount agreed upon as representing Scrufari's overtime salary attributed to the Welfare Fund–

$17,320.14–compounded annually through October 31, 2005, results in damages in the amount of $49,628.02 (*see* Item 222, Appx. at p. 5), contrasted with defendant's proposal of $31,090.51.  The agreed-upon lump sum amount of overtime salary attributed to the Pension Fund–$11,546.76–compounded annually through the same period, results in damages in the amount of $47,330.68 (*see id.* at p. 7), contrasted with defendant's proposal of $20,337.11.

With respect to fringe benefits, plaintiffs' counsel does not take issue with the lump-sum amount of $8,346.41 reported by defendant as the employer's Welfare Fund contributions based on Scrufari's unauthorized overtime.  Using this amount as a basis, compounded annually through October 31, 2005, plaintiffs' approach results in damages of $23,915.28 (Item 222, Appx. at p. 6), contrasted with defendant's proposal of $11,491.23.  However, in calculating damages to the Pension Fund, plaintiffs' counsel suggests that the court consider the amount Scrufari has actually received in pension benefits attributable to the unauthorized overtime, plus interest, totaling $18,211.90 as of October 31, 2005 (*id.* p. 8), contrasted with defendant's proposal of $9,314.54.  Plaintiffs' counsel also proposes that the court award damages based on pension benefits yet to be received by Scrufari (and his wife as surviving beneficiary), projected at an additional $25,532.78, for a total award of $43,564.68 as damages to the Pension Fund based on fringe benefits attributable to unauthorized overtime.

Based on these calculations, plaintiffs propose an award of damages to the Welfare Fund totaling $73,543.30, and to the Pension Fund totaling $90,895.36, for a grand total of $164,438.66.  The discrepancy between the two proposals amounts to $92,205.27.[5]

## C.    The Court's Determination of Damages

Upon careful consideration of the matters set forth in the parties' submissions, as well as the matters raised in the numerous conferences with the court and at oral argument on December 9, 2005, the court adopts plaintiffs' proposal for calculating damages, subject to certain modifications as discussed below.  This proposal makes good overall sense for a number of reasons.

First, it employs the methodology of O'Sullivan & Associates, a Fellow of the Conference of Actuaries, a member of the American Academy of Actuaries, and the Funds' "enrolled actuary" retained in compliance with ERISA (*see* Item 222, p. 2).  In contrast, the methodology for calculating interest used in defendant's proposal was apparently adopted by defense counsel without any explanation as to its accounting or actuarial basis.

Second, as the above discussion shows, the actuary's approach more accurately accounts for the range of variables to be considered in determining the amounts of Fund

---

[5]In response to plaintiffs' proposal, defense counsel submitted a letter dated November 30, 2005 (Item 224), which characterizes plaintiffs' submission as a belated "effort to proffer, at this late stage, expert testimony concerning damages which plaintiffs were fully aware was a required part of their proof at trial" (*id.* at p. 1).  The court rejects this characterization.  In directing the parties to submit their damages proposals after the bench trial on the issue of defendant's liability for breach of fiduciary duty under ERISA, the court was clearly acting within its discretion to address separately the issue of damages "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."  Fed. R. Civ. P. 42(b); *see Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984).  Counsel also requests in his 11/30/05 letter that the court limit damages to the amount attributable to the excess overtime salary paid to Scrufari, plus interest.  This request is likewise rejected as directly contrary to the court's finding that Scrufari breached his fiduciary duty by accepting fringe benefits based on unauthorized overtime.

principal actually invested, and a more accurate determination of rates of investment return for the applicable time period prior to January 1, 1998.  These rates for the most part were considerably higher than the statutory rates as proposed by defendant (*compare, e.g.*, Item 219, p. 5, *with* Item 222, p. 5).  When applied to the amounts of unauthorized overtime salary and associated fringe benefits, the measure of damages more accurately reflects the actual losses to the Funds resulting from defendant's breach of his fiduciary duties under ERISA.

Third, settlement of the parties' proposals without further costly litigation serves the important interest of moving this longstanding matter to final judgment.

The court's adoption of plaintiffs' proposal is subject to the following modifications for the following reasons.  First of all, the court agrees with plaintiffs' use of the earlier date of June 1, 1991 as the starting date for calculating interest (as opposed to the June 30, 1992 starting date used by defendant), since this proposal more closely reflects the Funds' investment yields from March 1989, which this court found to be the date when Scrufari began paying himself the unauthorized overtime salary.  However, the court declines to adopt plaintiffs' proposed ending date of October 31, 2005 (the last monthly reporting date prior to the November 14, 2005 submission of plaintiffs' counsel).  Instead, the court finds that December 31, 2003 is the most equitable cutoff date for calculation of damages under all of the circumstances presented, including the long pendency of the case, the parties' inability to reach agreement on the damages issue, and the length of time taken to complete the submission of damages proposals.  This result also takes into account– without fully adopting–defendant's position that amounts credited as benefit fund

contributions between 1989 and 1992 should not be considered as damages for breach of fiduciary duty (*see* Item 224, p. 2).[6]

In addition, the court declines to adopt plaintiffs' suggestion to award damages based on pension benefits yet to be received. Again, considering the equities of the case under all of the circumstances presented, including ERISA's requirement of personal liability on the part of the fiduciary to make the Funds whole and defendant's present financial ability to meet this obligation, the court will not impose this additional measure.

Accordingly, the court finds that plaintiffs are entitled to damages in the amount of $62,946.30 attributable to the Welfare Fund ($42,477.02 salary + 20,469.28 fringes; *see* Item 222, Appx. at pp. 5 & 6), and $52,016.28 attributable to the Pension Fund ($39,811.33 salary + $12,204.95 fringes; *see id.* at pp. 7 & 8), for total damages in the amount of $114,962.58.

The Clerk of the Court is directed to enter judgment in favor of plaintiffs in accordance with these findings, pursuant to Rules 52(a) and 58 of the Federal Rules of Civil Procedure.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: 2/22          , 2006

---

[6]As stated in defendant's November 30, 2005 letter:

Defendant had no benefit from either the Pension or the Welfare Fund prior to the November 5, 1992 meeting of the Board of Trustees at which the payment of four hours per week overtime was fully discussed and the Trustees determined not to seek recovery of any amounts from Scrufari . . . . Two years after Scrufari left his position as plan administrator, he applied for and received a pension and began to draw out the balance of his Welfare account. The benefits which Mr. Scrufari began to receive in 1998 were attributable to the 1992 decision to not seek recovery . . . .

(Item 224, p. 2).

p:\pending\1993\93-982.feb16.06.damages