UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SALVATORE J. LaSCALA, DOUGLAS A. JANESE
and RICHARD J. MARINO, Individually, as members
of Local 280, and as participants and Trustees or former
Trustees of the Niagara-Genesee & Vicinity Carpenters
Local 280 Welfare Fund,

                                              Plaintiffs,

                  -vs-                                              93-CV-982C(F)

SANTO S. SCRUFARI, Individually and as Plan Manager
of the Niagara-Genesee & Vicinity Carpenters Local 280
Welfare and Pension Funds,

                                              Defendant.

_____

        On January 15, 2004, this court issued findings of fact and conclusions of law after

trial finding that:

        1.        Defendant Santo Scrufari breached his fiduciary duties as Plan Manager of

the Niagara-Genesee & Vicinity Carpenters Local 280 Welfare and Pension Funds, in

violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), by paying

himself four hours weekly overtime pay from March 1989 to October 1992, and by

accepting additional weighted fringe benefits based on this inflated salary, without the

approval of the Funds' Board of Trustees.

        2.        Scrufari did not breach his fiduciary duties under ERISA when he set his

salary and took regular pay increases at the same rate as the union's General Agent

because the preponderance of the evidence at trial showed that the Trustees knew, or in

the exercise of their fiduciary duties should have known, that Scrufari was being

compensated at that rate.

3.      Scrufari did not breach his fiduciary duties under ERISA when he authorized salary increases for his son, Russell, without Trustee approval because the preponderance of the evidence at trial showed that the Funds did not suffer any loss as a result of Russell's employment.  *See LaScala, et al. v. Scrufari*, 330 F. Supp. 2d 236 (W.D.N.Y. 2004).

Following this ruling, the court conducted a series of conferences with counsel, seeking to determine the appropriate method for calculating damages and providing ample opportunity for the parties to reach agreement on resolution of the damages calculation issue without further costly litigation, all to no avail.  On February 27, 2006, having carefully considered the parties' divergent proposals for calculating damages and after hearing oral argument, the court issued an order finding that plaintiffs were entitled to an award of damages representing inflated overtime and fringe benefits paid to Scrufari in the amount of $62,946.30 attributable to the Welfare Fund, and $52,016.28 attributable to the Pension Fund, for total award of $114,962.58.  The court in large part adopted the methodology and reasoning of plaintiffs' proposal, but determined that the equitable circumstances of the case—including among other things the long pendency of the litigation, the parties' inability to reach agreement on the damages issue, and the individual defendant's ability to meet the financial obligations imposed under the statute—required an order limiting the accrual date for the damages award to December 31, 2003, and declining to award damages based on pension benefits yet to be received by Scrufari.  *See LaScala, et al. v. Scrufari*, 2006 WL 469404 (W.D.N.Y. February 27, 2006).

Plaintiffs then appealed, and on February 28, 2007, the United States Court of Appeals for the Second Circuit issued its decision reversing this court's determination in

several respects and remanding for calculation of damages. *LaScala, et al. v. Scrufari*, 479 F.3d 213 (2d Cir. 2007). Specifically, the circuit court found that the question of Scrufari's breach of the fiduciary duties imposed by ERISA—"the highest [duties] known to the law," *id.* at 221—did not turn on whether the Trustees knew or should have known about his actions and acquiesced, but rather on whether Scrufari himself acted in accordance with those duties. *Id.* at 220-21. The circuit court also found that, while the fact that the Funds did not suffer any loss as a result of the salary increases Scrufari granted to his son may bear on the question of damages, it had no bearing on whether Scrufari breached his fiduciary duties in the first place. *Id.* at 221. Finally, the circuit court reversed outright this court's determination that damages on the overtime pay and fringe benefit claims stopped accruing on December 31, 2003, and that damages should not be awarded on pension benefits yet to be received, finding that the statutory obligation to restore to the Funds the profits attributable to the fiduciary breaches "may not be reduced for any of the reasons the district court offered." *Id.* at 222. The case was remanded to this court "to calculate damages on the salary claims and to recalculate damages on the overtime pay and fringe benefit claims." *Id.*[1]

---

[1]With respect to fringe benefits, this court initially found that Scrufari breached his fiduciary duties by awarding himself unauthorized retroactive weighted fringe benefits for a period from 1985 to 1989, but later modified this finding upon reconsideration to reflect that, while the issue was not fully litigated at trial, the weight of the available evidence supported the conclusion that the retroactive award of weighted fringe benefits had in fact been considered and approved by the Trustees. *See LaScala, et al. v. Scrufari*, 330 F. Supp. 2d 236, 257-61 (W.D.N.Y. 2004). The Second Circuit held that, while this finding was "not clearly erroneous," the fringe benefit amounts may have been artificially inflated as a result of the unauthorized salary raises Scrufari gave himself in breach of his fiduciary duties, representing "an element of damages for the district court to consider on remand." 479 F.3d at 221 n.3.

Toward accomplishing this task, plaintiffs' counsel submitted his revised damages proposal to the court and to defense counsel, reflecting counsel's considerable effort to determine the proper methodology for calculating the amounts due from Scrufari as the result of having prevailed on appeal (*see* Item 236). Upon review of this submission, as well as defense counsel's response (Item 237), the court conducted a series of conferences to address the difficulties it was having interpreting these submissions, and to explore the prospects for resolution of the damages calculation issue without the need for additional costly expert discovery. However, as before, communications between counsel revealed increasingly divergent positions with respect to the proper methodology for calculating damages. As a result, plaintiffs' counsel retained the services of an actuary, Mr. David M. Cahn, Executive Director of Federation Pension Bureau, Inc., to perform the calculations, and filed his expert report (Item 246). The court gave defense counsel the opportunity to respond (Item 249) and scheduled a hearing, which took place on November 17, 2008. Mr. Cahn testified at the hearing, as did Mr. Richard C. Smith, a Senior Consultant and Actuary for the Funds' actuarial firm, O'Sullivan Associates, Inc.

Upon review of the actuarial calculations submitted by plaintiffs, defendant's response, and the testimony presented at the hearing, the court adopts plaintiffs' proposal (subject to certain modifications as explained below) in an effort to comply with the circuit court's remand directive, and to bring this longstanding dispute to resolution.

## Plaintiffs' Proposal

Plaintiffs' damages proposal consists of two separate sets of calculations. As explained by Mr. Cahn at the damages hearing, the "First Set" (Item 255, Ex. 12)

represents Mr. Cahn's calculation of damages to the Funds based upon the assumption that Scrufari was entitled only to be compensated at the hourly rate of $18.47, as approved by the Trustees at their March 7, 1985 meeting, and was not entitled to any fringe benefits —that is, Pension Fund service credits or Welfare Fund contributions. The "Second Set" represents Mr. Cahn's calculations of damages to the Funds based upon the assumption that Scrufari *was* entitled to Pension Fund service credits as of March 7, 1985, and Welfare Fund contributions at the salary rate that was in effect on that date (*see* Hearing Transcript, Item 252, at 8-12).

As indicated above, this court's determination that the fringe benefits received by Scrufari had in fact been approved by the Trustees was found by the Second Circuit to be "not clearly erroneous." 479 F.3d at 221 n.3. The circuit court also found that, to the extent the fringe benefit amounts Scrufari received may have been artificially inflated as a result of the unauthorized salary raises he gave himself in breach of his fiduciary duties, those amounts represent an element of damages for this court to consider on remand.

Accordingly, this court will consider Mr. Cahn's "Second Set" of calculations as the appropriate submission by plaintiffs for the purposes of calculating damages in compliance with the remand order.

As an initial matter, defendant contends that the calculation of damages based on the unauthorized wages, overtime, and fringe benefits taken by Scrufari should not be rigidly tied to the $18.47 hourly rate in effect at the time of the March 7, 1985 Trustee meeting, but rather should reflect the contractually established general foreman rate which ordinarily increased on an annual basis (*see* Item 249, pp. 2-3; Item 250, pp. 1-2). This court has already expressly rejected this position in its liability decision, finding no support

in the record for Scrufari's claim "that his salary increases were [like those of the General Agent, Sanoian] tied to the collective bargaining agreement as a result of his understanding with Sanoian, and thus were authorized without requiring Trustee approval." *LaScala v. Scrufari*, 330 F. Supp. 2d 236, 243 (W.D.N.Y. 2004). Scrufari did not appeal from this ruling, and the court finds no reason to reconsider it at this stage of the proceedings.

In any event, considering the Second Circuit's ruling on reversal and remand that "[a] prudent person in Scrufari's position, bound by the highest duty known to the law, would have known that he could not raise his compensation without a majority vote of the trustees and further would have known that no majority vote had taken place," *LaScala*, 479 F.3d at 221, the proper measure of damages must reflect that Scrufari's wages, overtime, and fringe benefits based on an hourly rate higher than $18.47 were paid without approval by the Trustees. In the absence of any actuarial basis for calculating damages at a different rate, this court is in no position to set an alternative hourly rate amount.

Turning then to plaintiffs' proposal, Mr. Cahn's report indicates that he made his actuarial calculations according to specific directions provided by plaintiffs' counsel and upon review of the factual background and documents comprising the court record, the documents provided by the Funds' office pursuant to subpoena, the Trust Agreements for each of the Funds, and the decisions of the district and circuit courts. The calculations are summarized here as follows.

## 1. Unauthorized Excess Wages Through April 18, 1993

This calculation represents the total of Scrufari's weekly pay taken in excess of $18.47 per hour from July 1, 1985 through February 14, 1993 (including 7 weeks of

vacation pay), and weekly pay taken in excess of $24.48 per hour from February 15, 1993 through April 18, 1993 (the date on which Scrufari's Trustee-approved compensation package finally took effect). The total amount of unauthorized wages is $89,905.60, which is then allocated between the Welfare Fund burden of 60% (= $53,943.36) and the Pension Fund burden of 40% (= $35,962.24) (*see* Item 255, Ex. 13, at 2-4).

Defendant makes the general argument that the court should not consider Scrufari's vacation pay in its damages calculation, since there is nothing in the record to indicate that Scrufari was not authorized to take paid vacation time. However, the issue for this court on remand is not whether Scrufari's vacation pay was authorized, but rather the calculation of damages to the Funds based on the total compensation taken by Scrufari in excess of the authorized hourly rate.

Accordingly, the court adopts plaintiffs' calculation of $89,905.60 as the total damages based on unauthorized wages taken by Scrufari, with $53,943.36 allocated to the Welfare Fund, and $35,962.24 allocated to the Pension Fund.

## 2.    Unauthorized Excess Wages Taken from the Pension Fund, with Interest

This calculation represents the weekly totals of excess wages as allocated to the Pension Fund, plus pre-judgment interest compounded annually at the investment rates of return realized by the Pension Fund, totaling $209,391.00 through December 31, 2007. Thereafter, plaintiffs' proposal calculates interest at the 9.0% rate set forth in C.P.L.R. § 5004.

Defendant generally disputes plaintiffs' application of the 9.0% C.P.L.R. rate to all interest-bearing amounts to determine annual pre-judgment interest after December 31,

2007.  According to defendant, both the Welfare Fund and the Pension Fund have been merged into the statewide Empire State Carpenters Welfare and Pension Funds, which will be the beneficiary of any damages paid by Scrufari and can provide appropriate investment return information for the period from January 1, 2008 through the date of entry of this order, to be used in calculating total damages to the Funds in accordance with the Second Circuit's directive on remand.

In the interest of moving this case toward a final resolution, the court finds defendants' proposal to be a reasonable one.  The rates of return should be readily ascertainable information which the parties can review and agree upon as an appropriate joint submission, and which can be utilized by the court in fashioning an order of final judgment reflecting the actual damages suffered by the Funds as the result of Scrufari's breaches of fiduciary duties.

Accordingly, the court adopts plaintiffs' calculation of damages based on unauthorized wages plus interest as allocated to the Pension Fund, totaling $209,391.00 as of December 31, 2007, and defers entry of final judgment until receipt of the updated investment information as directed above.

**3.      Unauthorized Excess Wages Taken from the Welfare Fund, with Interest**

This calculation represents the weekly totals of excess wages as allocated to the Welfare Fund, plus interest compounded at the investment rates of return realized by the Welfare Fund, totaling $193,901.44 through December 31, 2007 (*see id*. at 8-10).  The court adopts this calculation, deferring entry of final judgment until receipt of the updated investment information as directed above.

**4.    Unauthorized Overtime Wages Through October 4, 1992**

This calculation represents weekly overtime pay taken by defendant from February 22, 1989 through October 4, 1992, totaling $28,866.90, as allocated between the Welfare Fund burden of 60% (= $17,320.14) and the Pension Fund burden of 40% (= $11,546.76) (*see id.* at 11).  The court adopts this calculation as the amount of damages based on unauthorized overtime wages.

**5.    Unauthorized Overtime Wages Taken from the Pension Fund, with Interest**

This calculation represents weekly overtime pay taken by defendant from February 22, 1989 through October 4, 1992, as allocated to the Pension Fund, plus interest compounded at the investment rate of return realized by the Pension Fund, totaling $59,998.00 through December 31, 2007 (*see id.* at 13).  The court adopts this calculation, deferring entry of final judgment until receipt of the updated investment information as directed above.

**6.    Unauthorized Overtime Wages Taken from the Welfare Fund, with Interest**

This calculation represents weekly overtime pay taken by defendant from February 22, 1989 through October 4, 1992, as allocated to the Welfare Fund, plus interest compounded at the investment rates of return realized by the Welfare Fund, totaling $56,126.01 through December 31, 2007(*see id.* at 14-15).  The court adopts this calculation, deferring entry of final judgment until receipt of the updated investment information as directed above.

**7.  Unauthorized Excess Welfare Fund Contributions Through April 4, 1993**

This calculation represents the total of defendant's monthly Welfare Fund contributions attributable to "weighting" in excess of $18.47 per hour, and in excess of the Fund contribution rate of $2.695 per hour on the number of "weighted" hours, from July 1, 1985 through February 14, 1993; plus monthly Welfare Fund contributions made in excess of $24.48 per hour from February 15, 1983 through April 4, 1993, totaling $54,729.03 (*see id.* at 16-18).  The court adopts this calculation as the amount of damages based on unauthorized excess welfare fund contributions.

**8.  Unauthorized Excess Welfare Fund Contributions, with Interest**

This calculation represents the total of defendant's monthly excess Welfare Fund contributions attributable to "weighting," plus interest compounded at the investment rate of return realized by the Welfare Fund, totaling $194,455.84 through December 31, 2007 (*see id.* at 19-21).  The court adopts this calculation, deferring entry of final judgment until receipt of the updated investment information as directed above.

**9.  Unauthorized Overtime Welfare Fund Contributions Through October 4, 1993**

This calculation represents the total of monthly Welfare Fund contributions made with respect to the weekly overtime pay taken by defendant from February 22, 1989 through October 4, 1993, totaling $8,346.57 (*see id.* at 22).  The court adopts this calculation as the amount of damages to the Welfare Fund based on unauthorized overtime pay.

**10.     Unauthorized Overtime Welfare Fund Contributions, with Interest to Date**

This calculation represents the total monthly Welfare Fund contributions made with respect to the weekly overtime pay taken by defendant from February 22, 1989 through October 4, 1993, plus interest compounded at the investment rate of return realized by the Welfare Fund, totaling $26,880.29 through December 31, 2007.  The court adopts this calculation, deferring entry of final judgment until receipt of the updated investment information as directed above.

**11.     Unauthorized Excess Pension Fund Hours Through October 18, 1992**

This calculation represents the total of cumulative excess Pension Fund service credits taken by Scrufari, based on weighting factors applied to weekly excess hours through October 18, 1992, totaling 4,741.32 excess pension credits (*see id.* at 19-20).

**12.     Unauthorized Excess and Overtime Monthly Pension Benefits**

This calculation represents the dollar value of monthly pension benefits attributable to excess and overtime hours, totaling $505.16 per month at $10.38 per service point, taken from January 1, 1998 through October 31, 1998, and $551.88 per month at $11.34 per service point, taken thereafter (*see id.* at 21).

**13.     Unauthorized Excess and Overtime Pension Benefits, with Interest to Date**

This calculation represents the total excess pay and overtime pension benefits received by defendant, plus interest compounded at the investment rate of return realized by the Pension Fund, totaling $101,653.20 through December 31, 2007 (*see id.* at 28-29).

The court adopts this calculation, deferring entry of final judgment until receipt of the updated investment information as directed above.

**14.    Value of Unauthorized Future Excess and Overtime Benefits**

This calculation represents the present actuarial value of future monthly pension benefits attributable to excess and overtime hours credited to Scrufari, totaling $109,629.73.  In light of the Second Circuit's finding that Scrufari will continue receiving pension benefits "for some period of time into the future, and that some portion of these benefits has been and will be attributable to Scrufari's fiduciary breaches," 479 F.3d at 222, and in the absence of a reasoned alternative, the court adopts this calculation.

## Conclusion

The following constitutes the court's calculation of damages to the Pension and Welfare Funds resulting from defendant's breach of fiduciary duty under ERISA, in accordance with the Second Circuit's remand directives:

PENSION FUND:

| | |
|---|---|
| Excess Wages, with Interest[2]  (Calculation 2): | $209,391.00 |
| Overtime Wages, with Interest (Calculation 5): | 59,998.00 |
| Excess & Overtime Benefits Received, with Interest (Calculation 13): | 101,653.20 |
| Value of Future Excess & Overtime Benefits (Calculation 14): | 109,629.73 |
| Total Damages to Pension Fund: | $480,671.93 |

---

[2]As discussed in the text *infra*, the pre-judgment interest on all reported damages amounts have been calculated at the Funds' reported rates of investment return through December 31, 2007, and entry of final judgment is being deferred pending receipt of updated investment information.  As in any case, there is nothing preventing the parties from using the interim period between decision and final judgment to negotiate a different result.

<u>WELFARE FUND</u>:

| | |
|---|---|
| Excess Wages, with Interest (Calculation 3): | $193,901.44 |
| Excess Contributions, with Interest (Calculation 8): | 194,455.84 |
| Overtime Contributions, with Interest (Calculation 10): | 26,880.29 |
| Total Damages to Welfare Fund: | $415,237.57 |
| Total (Both Funds): | $895,909.50 |

Entry of final judgment is deferred pending the parties' joint stipulated submission of updated annual investment return information for the period from January 1, 2008 through the date of entry of this order.  This stipulation, along with a joint proposed final judgment, shall be filed within 30 days from the date of entry of this order.

So ordered.

  \s\John T. Curtin    
JOHN T. CURTIN
United States District Judge

Dated: 2/4/10
p:\pending\1993\93-982.dec21.09