UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SALVATORE J. LaSCALA, DOUGLAS A. JANESE
and RICHARD J. MARINO, Individually, as members
of Local 280, and as participants and Trustees or former
Trustees of the Niagara-Genesee & Vicinity Carpenters
Local 280 Welfare and Pension Funds,

                                        Plaintiffs,

             -vs-                                              93-CV-982-JTC

SANTO S. SCRUFARI, Individually and as Plan Manager
of the Niagara-Genesee & Vicinity Carpenters Local 280
Welfare and Pension Funds,

                                        Defendant.

_____

        By order entered February 24, 2011 (Item 260), the court directed entry of final

judgment in this action awarding plaintiffs, participants and Trustees or former Trustees of

the Niagara-Genesee & Vicinity Carpenters Local 280 Welfare and Pension Funds,

damages in the amount of $1,117,783.33, for defendant's breach of his fiduciary duties as

Plan Manager of the Funds, in violation of the Employee Retirement Income Security Act

of 1974 ("ERISA").  This amount included pre-judgment interest compounded annually

through February 5, 2010, the date of entry of the court's order recalculating damages in

accordance with the Second Circuit' decision in *LaScala, et al. v. Scrufari*, 479 F.3d 213

(2d Cir. 2007).  *See* Item 257.

        As explained in the court's February 5, 2010 order, the amount of interest was

calculated at the actual investment rates of return realized by the Funds through

December 31, 2007, the last date for which such information was available.  The court

deferred entry of final judgment pending submission of a joint stipulation and proposed final

judgment, within thirty days, incorporating updated information regarding the actual investment rates of return realized by the Funds for the remaining compensable interest period from January 1, 2008 through February 5, 2010.  However, more than a year later, no such submission had been made.

Accordingly, in the interest of moving this interminably longstanding dispute toward final resolution, the court calculated pre-judgment interest for the remaining two-year period at the rate of 9% as set forth in N.Y.C.P.L.R. § 5004, as proposed by plaintiffs, and directed the Clerk of the Court to enter final judgment on the total amount of $1,117,783.33.  This engendered a series of motions from both sides seeking various forms of post-judgment relief, listed here in the order of their filing as follows:

1.      Plaintiffs' motion for an award of attorney's fees and costs under 29 U.S.C. § 1132(g)(1) and Fed. R. Civ. P. 54(d)(1) and (2) (Item 262);

2.      Defendant's motion to amend the judgment, pursuant to Fed. R. Civ. P. 59(e), seeking to recalculate the amount of pre-judgment interest based upon the Funds' actual investment rates of return for the years 2008 and 2009 (Item  263);

3.      Plaintiffs' motion to amend the judgment to reflect the offset of the amount of damages to be paid to the Pension Fund against defendant's pension benefits, as authorized by 29 U.S.C. § 1056(d) (Item 265);

4.      Defendant's motion to vacate the final judgment pursuant to Fed. R. Civ. P. 60, and to strike plaintiff's motion for attorney's fees, based on plaintiffs' counsel's failure to disclose the continuing representation of disqualified attorney David B. Herrmann, Jr., the Funds' former general counsel, as reflected in the billing entries submitted with the fee application (Item 266);

5.    Plaintiffs' cross-motion to amend the judgment by increasing the damages award to restore any profits realized by defendant on investments of Fund assets wrongfully obtained (Item 272); and,

6.    Plaintiffs' motion to join the Funds, and/or their successors in interest by merger, the Empire State Carpenters Funds ("Empire Funds"), as parties to allow for recourse for payment of attorney's fees from the Funds, or from the fidelity bond or insurance policy  required by statute for this purpose (*see* Item 273).

Faced with this onslaught, the court initially granted defendant's request to defer further proceedings on the motions for attorney's fees and amendment of the judgment, pending determination of defendant's Rule 60 motion to vacate.  *See* Items 267-268. However, upon due consideration after further review of the matters raised by the various motions, the court referred the attorney's fee dispute to mediation in accordance with the ADR Plan for the Western District of New York, and adjourned the remaining post-judgment motions pending the outcome of the mediation.  The court's order made it clear that the referral for mediation of the matters raised by the motion for attorney's fees did not prevent the parties from submitting any or all of the other remaining issues to the mediator, in the interest of bringing this matter to a close.  This attempt at conciliation, like several previous attempts, once again proved futile when, on October 11, 2011, mediator Michael A. Brady certified that the mediation had been completed without resolution.  Item 279.

In the meantime, the court received a letter from counsel for the Empire Funds requesting that any further briefing on the motion for joinder be held in abeyance until three weeks after the court rules on defendant's motion to vacate the judgment, at which time

-3-

the parties have agreed it would be appropriate for the Empire Funds to file a response to plaintiffs' motion for joinder/liability for attorney's fees. *See* Item 276. This request is granted, and the court now turns its attention to the two motions deemed fully briefed and ripe for consideration: (1) defendant's motion to vacate the judgment pursuant to Rule 60, and (2) defendant's motion to amend the judgment pursuant to Rule 59(e).

### 1.      Defendant's Motion to Vacate the Judgment

Following receipt of plaintiffs' application for attorney's fees (Item 262), defendant moved to vacate the final judgment pursuant to Rule 60(b). According to defendant, the affirmations and time records submitted in support of the attorney fee application reveal, for the first time, that substantial legal services have been performed on behalf of plaintiffs by attorney David Herrmann, notwithstanding the court's ruling in February 1994 disqualifying attorney Norman LeBlanc from representing plaintiffs due to a conflict of interest because of his close professional association with Mr. Herrmann, who was then serving as legal counsel to the Funds in all matters other than this litigation. *See Niagara-Genesee & Vicinity Carpenters Local 280 v. United Broth. of Carpenters and Joiners of America*, 843 F. Supp. 855 (W.D.N.Y. 1994). Defendant contends that plaintiffs' failure to disclose Mr. Herrmann's continued "secret" involvement constitutes fraud, providing a sufficient basis for the court to vacate the final judgment and underlying verdict, strike plaintiffs' motion for attorney's fees, and dismiss the case.

In response, plaintiffs maintain that defendant's allegations of fraud are completely without merit, since Mr. Herrmann's performance of legal services on their behalf were neither "secret" nor in derogation of the court's February 1994 ruling regarding Mr.

LeBlanc's disqualifying conflict of interest.  Plaintiffs also contend that the motion to vacate is untimely in any event, both with respect to the underlying liability verdict entered in January 2004, and the final judgment after remand to calculate damages entered in February 2011.

Defendant seeks relief under Rule 60(b)(3), which allows the district court, in the exercise of its "sound discretion," to "relieve a party or its legal representative from a final judgment, order, or proceeding for … fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party …."  Fed. R. Civ. P. 60(b)(3); *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).  Defendant also invokes Rule 60(d)(3), which allows the court to "set aside a judgment for fraud on the court."  Fed. R. Civ. P. 60(d)(3).  A motion under Rule 60(b)(3) "must be made within a reasonable time–and … no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).  There is no set time limit for a motion under Rule 60(d).  *Bowie v. Maddox*, 677 F. Supp. 2d 276, 278 (D.D.C. 2010) ("'Fraud on the court' " is a claim that exists to protect the integrity of the judicial process, and therefore a claim for fraud on the court cannot be time-barred.), *cited in In re Old Carco LLC*, 423 B.R. 40, 51-52 (Bankr. S.D.N.Y. 2010), *aff'd*, 420 Fed. Appx. 89 (2d Cir. 2011).

Since relief from a judgment under Rule 60(b) is "extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances."  *Nemaizer*, 793 F.2d at 61; *see also Patterson v. Rodgers*, 2010 WL 3081269, at *2 (D.Conn. Aug. 5, 2010).  "The burden is on the moving party to demonstrate the exceptional circumstances which warrant

the extraordinary relief allowed by Rule 60(b)." *Salter v. Hooker Chemical, Durez Plastic & Chemical Div.*, 119 F.R.D. 7, 8 (W.D.N.Y. 1988).

A motion made under Rule 60(b)(3) to vacate a judgment based on fraud by the opposing party "cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits." *Fleming v. New York University*, 865 F.2d 478, 484 (2d Cir. 1989) (citing *Mastini v. American Tel. & Telegraph Co.*, 369 F.2d 378, 379 (2d Cir. 1966), *cert. denied*, 387 U.S. 933 (1967)). In addition, to prevail on a Rule 60(b)(3) motion, the moving party "must show that the fraudulent conduct complained of prevented [him] from fully and fairly presenting his case." *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004) (internal quotation marks omitted), *cert. denied*, 543 U.S. 1177 (2005).

With regard to defendant's motion under Rule 60(d)(3) to vacate the judgment for "fraud on the court," the Second Circuit has explained that "the type of fraud necessary to sustain an independent action attacking the finality of a judgment" under Rule 60(d) "is narrower in scope than that which is sufficient for relief" under Rule 60(b)(3). *Gleason v. Jandrucko*, 860 F.2d 556, 558 (2d Cir. 1988)). "[T]he concept of 'fraud on the court' embraces 'only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases.'" *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995); *Space Hunters, Inc. v. United States*, 2011 WL 1899627, at *3 (S.D.N.Y. May 17, 2011). Thus, relief from judgment under Rule 60(d) is only available when necessary "to prevent a grave miscarriage of justice." *United States*

*v. Beggerly*, 524 U.S. 38, 47 (1998), *quoted in LinkCo, Inc. v. Naoyuki Akikusa*, 367 Fed.Appx. 180, 182 (2d Cir.), *cert. denied*, ___U.S.___,131 S.Ct. 388 (2010).

Viewing the record presented on this motion in light of these stringent standards, the court finds that defendant has failed to demonstrate by clear and convincing evidence that plaintiffs' counsel fraudulently concealed Mr. Herrmann's performance of legal work on plaintiffs' behalf so as to warrant the extraordinary relief requested under Rule 60.  Indeed, the record reflects that defendant's counsel has been aware of Mr. Herrmann's work on the case since at least December 2002, when Herrmann testified at the liability trial in this action as a witness for plaintiffs.  Attached as Exhibit B to counsel's "Declaration" in support of defendant's motion to vacate is an excerpt from the trial transcript containing the following exchange during Mr. Herrmann's cross-examination:

> Q     Now, … you have been active in the preparation, presentation of this lawsuit, have you not?
>
> A     Yes, I have worked on it, sure.
> …
> Q     You prepared several of the affidavits?
>
> A     I might have early on, yes.
>
> Q     Did you prepare the chronology, and description of relevant occurrences?
>
> A     I don't know what that is.
>
>         THE COURT:       Is it an exhibit?
>
>         MR. McCARTHY:    No, it's a pleading, it's the plaintiff[s'] statement of undisputed facts.
>
>         THE WITNESS:     I helped get some of the information for that, yes.
>
>         BY MR. HARREN:
> Q     Did you have … meetings with the plaintiffs concerning settlement offers?

A      No.

Q      Did you have any discussions with plaintiffs concerning settlement offers?

A      It might have been mentioned to me.

Q      By whom?

A      By one of the plaintiffs.

Q      Which one?

A      I don't recall.

Item 266-3, pp. 4-5.

In addition, on June 23, 2008, plaintiffs' counsel wrote a letter to Robert Archer, attorney for the Empire Funds, explaining Mr. Herrmann's participation in the preparation of updated calculations of damages for consideration and actuarial review in anticipation of the court's November 2008 damages hearing.   Item 271-1, pp. 2-4.   Although defendant's counsel was not copied on this letter, it became apparent during the hearing that counsel was well aware of Mr. Herrmann's work on plaintiffs' behalf in preparing the damages calculations.   For example, during defendant's cross-examination of plaintiffs' actuarial expert David Cahn, the following exchange took place:

Q.      Mr. Cahn, good morning. My name is Michael Harren.  I'm the attorney for Mr. Scrufari in this matter.  I've reviewed your calculations in which you just testified to, and I'm wondering if after reading your letter, did you generate these calculations in your office or did you review them and find them appropriate?

A.      I reviewed them and made changes that I thought were appropriate to the way the interest was accumulated and things like that.

Q.      Okay.

A.      Which produced some changes in them.  That was done in my office.

-8-

Q.     But the basic calculations were prepared by whom?  Do you know?

THE COURT:         Mr. Harren, what do you mean by, basic calculations?

MR. HARREN:        The original calculations were prepared by Mr. (Herrmann) and then reviewed and corrected by the witness, as I understand the testimony.

THE WITNESS:       Yes.

THE COURT:         But that is as to what Mr. Scrufari was paid at particular times.

MR. HARREN:        No.  These calculations were originally prepared by Mr. (Herrmann) and reviewed by Mr. Cahn.

MR. McCARTHY:      And he made changes.

MR. HARREN:        Yes.

THE WITNESS:       Yeah.

Item 252, pp. 12-13.

Based on this record testimony alone, it is clear to the court that defendant's counsel had actual knowledge of Mr. Herrmann's legal and actuarial work on behalf of plaintiffs in this case several years prior to the filing of plaintiffs' post-judgment motion for attorney's fees.   Accordingly, defendant has failed to come forward with clear and convincing evidence of any fraudulent concealment or material misrepresentations on the part of plaintiffs' counsel which can be said to have prevented defendant from fully and fairly presenting his case, or to have interfered with the court's impartial adjudication of the dispute, so as to warrant the extraordinary judicial relief from judgment requested under Rule 60.

### 2.      Defendant's Motion to Amend the Judgment

As indicated above, in its order directing entry of final judgment, the court calculated pre-judgment interest for the period from January 1, 2008, through February 5, 2010, based on the statutory rate of 9%, rather than waiting any longer for the parties to comply with the directive to submit  a joint stipulation and proposed final judgment based on the actual annual investment rates of return realized by the Funds for that two-year period. Defendants now request a recalculation of pre-judgment interest based upon the investment information anticipated by the court, which the motion papers reflect was obtained in a timely manner from Slevin & Hart, P.C., counsel for the Empire Funds, and provided to plaintiffs' counsel by letter dated April 8, 2010.  According to this information, the annualized rate of return for the two-year period between January 1, 2008 and December 31, 2009 was negative 9.8% for the Pension Fund, and negative 11.8% for the Welfare Fund.  *See* Item 263, Ex. A..  Applying these figures, recalculation of pre-judgment interest would result in a reduction of the overall damages set by the court from $1,117,783.33 to $732,157.35, amounting to a significant discount.

Needless to say, plaintiffs' counsel declined to enter into any stipulation or proposed judgment incorporating these calculations.  According to plaintiffs, "logic as well as the common law of trusts" prevents a breaching fiduciary from reducing his liability for losses to the Funds through setoff as the result of negative market performance.  Item 272-1, ¶ 23.  Instead, in an effort to compromise, plaintiffs' counsel proposed that the parties stipulate to a final judgment waiving any claim to pre-judgment interest for the period between January 1, 2008 and February 5, 2010 as to all categories of damages except damages to the Pension Fund attributable to excess and overtime benefits (Category 13).

This would result in an additional $14,348.88 in pre-judgment interest, bringing the total amount of damages to the Pension Fund to $495,020.81, and the overall total of damages to both Funds to $966,384.39.  *See* Item 272-2, Ex. B; Item 272-1, ¶ 17.

Plaintiffs cite *Chao v. Merino*, 452 F.3d 174 (2d Cir. 2006), in which the Second Circuit rejected a breaching fiduciary's claim that the losses to the fund caused by her breach should be offset by voluntary additional contributions by employers and moneys provided by the merging fund, which allowed all of the claims of plan beneficiaries to be paid.  The circuit court noted that setoffs against losses caused by a breaching fiduciary may be allowed if the fiduciary can show that the use of fund assets was "'fair and reasonable under all of the circumstances.'"  *Id.* at 184 (quoting *New York State Teamsters Council Health & Hospital Fund v. Estate of DePerno*, 18 F.3d 179, 183 (2d Cir. 1994)).  However, the circuit court found "no rational basis for a setoff here, for there could be no possibility that any part of [defendant's conduct] was fair and reasonable …."  *Merino*, 452 F.3d at 184.

Following this persuasive reasoning here, the court finds no rational basis for applying the reported negative annualized rates of return as a setoff to the amount of damages awarded by  the court to compensate the Funds for defendant's longstanding history of self-dealing, as established by the preponderance of the evidence at trial.  Rather, in the interests of finality, the court finds plaintiffs' proposal to waive the claim for pre-judgment interest for the two-year period prior to entry of final judgment to be fair and reasonable under all of the circumstances, and the court will direct the Clerk of the Court to amend the final judgment accordingly.

To summarize, defendant's motion (Item 266) to vacate the judgment pursuant to Fed. R. Civ. P. 60 is denied.  Defendant's motion (Item 263) to amend the judgment pursuant to Fed. R. Civ. P. 59(e) to recalculate pre-judgment interest to reflect the actual annual investment rates of return realized by the Funds for the two-year period prior to entry of final judgment is also denied; however, upon review of all of the circumstances, the court finds that it is fair and reasonable to adopt plaintiffs' proposal to waive the claim for pre-judgment interest for that period as to all categories of damages except damages to the Pension Fund attributable to excess and overtime benefits, as indicated above.  The Clerk of the Court is therefore directed to amend the final judgment to reflect an award of total damages to the Pension Fund in the amount of $495,020.81; total damages to the Welfare Fund in the amount of $471,363.58; and overall total of damages to both Funds in the amount of $966,384.39.

The following post-judgment motions remain pending:

1.      Plaintiffs' motion for an award of attorney's fees and costs (Item 262);

2.      Plaintiffs' motion to amend the judgment to reflect the offset of the amount of damages to be paid to the Pension Fund against defendant's pension benefits (Item 265)

3.      Plaintiffs' motion to amend the judgment by increasing the damages award to restore any profits realized by defendant on investments of Fund assets wrongfully obtained (Item 272); and,

4.      Plaintiffs' motion to join the Funds, and/or their successors in interest by merger, the Empire State Carpenters Funds ("Empire Funds"), as parties to allow for recourse for payment of attorney's fees from the Funds, or from the

fidelity bond or insurance policy  required by statute for this purpose (*see* Item 273).

Defendant's responses to these motions, as well as any submissions by the Empire Funds, are due on or before December 27, 2011.  Plaintiffs' consolidated reply to these submissions, if any, is due on or before January 26, 2012.  The court will then take these matters under advisement.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: 11/18   , 2011
p:\pending\1993\93-982.nov8.2011