UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SALVATORE J. LaSCALA, DOUGLAS A. JANESE
and RICHARD J. MARINO, Individually, as members
of Local 280, and as participants and Trustees or former
Trustees of the Niagara-Genesee & Vicinity Carpenters
Local 280 Welfare and Pension Funds,

                                        Plaintiffs,

                -vs-                                                    93-CV-982-JTC

SANTO S. SCRUFARI, Individually and as Plan Manager
of the Niagara-Genesee & Vicinity Carpenters Local 280
Welfare and Pension Funds,

                                        Defendant.
_____

        Pending for determination in this case are the following post-judgment motions:

    1.    Plaintiffs' motion for an award of attorney's fees and costs (Item 262);

    2.    Plaintiffs' motion to amend the judgment to reflect an "offset" of the amount

          of damages to be paid to the Pension Fund against defendant's pension

          benefits (Item 265)

    3.    Plaintiffs' cross-motion to amend the judgment by increasing the damages

          award to restore any profits realized by defendant on investments of Fund

          assets wrongfully obtained (*see* Item 272); and,

    4.    Plaintiffs' motion to join the Funds, and/or their successors in interest by

          merger, the Empire State Carpenters Funds ("Empire Funds"), as parties to

          allow for recourse for payment of attorney's fees from the Funds, or from the

          fidelity bond or insurance policy required by statute for this purpose (*see* Item

          273).

The court has received and reviewed the written submissions with respect to the issues raised by these motions, and now makes the following rulings.

## 1.   Plaintiffs' Motion for Attorney's Fees

A set forth in the affirmations and exhibits supporting plaintiffs' attorney fee application, plaintiffs' counsel Timothy A. McCarthy has served as attorney of record in this matter since April 1994. *See* Item 262-1, ¶ 2.  He seeks payment of $657,404.69 for legal services performed by himself and attorney David B. Herrmann, Jr., between April 1, 1994 and April 22, 2010, along with disbursements in the amount of $12,757.07, for a total award of $670,161.76. *See* Item 262-2.

ERISA provides that, in an action for breach of fiduciary duty brought by a participant, beneficiary, or fiduciary, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  Prior to the Supreme Court's recent decision in *Hardt v. Reliance Standard Life Insurance Company*, 560 U.S. ___, 130 S.Ct. 2149 (2010), courts in this Circuit were required to consider the following five factors to determine whether to award attorney's fees under this "fee-shifting" provision:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987).

In *Hardt*, the Supreme Court held that these five factors[1] "bear no obvious relation to [Section] 1132(g)(1)'s text or to [the Court's] fee-shifting jurisprudence, [and therefore] are not required for channeling a court's discretion when awarding fees." *Hardt*, 130 S.Ct. at 2158 (emphasis added). Rather, the proper standard for determining whether a fee claimant is eligible for § 1132(g)(1) fees is whether the claimant has achieved " 'some degree of success on the merits ....' " *Id.* (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983).

The Second Circuit has since commented that *Hardt* did not foreclose application of the *Chambless* factors in deciding whether to award attorney's fees under ERISA § 1132(g)(1):

> *Hardt*'s recognition that courts need not apply the *Chambless* factors does not mean … that the district court abuse[s] its discretion when it use[s] the *Chambless* factors to structure its analysis. A court may apply—but is not required to apply—the *Chambless* factors in "channeling [its] discretion when awarding fees" under § 1132(g)(1). So long as a party has achieved "some degree of success on the merits," a "court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Thus, a district court must begin its § 1132(g)(1) analysis by determining whether a party has achieved "some degree of success on the merits," but it is not required to award fees simply because this pre-condition has been met.

*Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108, 110-11 (2d Cir. 2011) (quoting *Hardt*, 130 S.Ct. at 2158 & n.8); *cf. Taaffe v. Life Ins. Co. of N. Am.*, 769 F. Supp. 2d 530, 542 (S.D.N.Y.

---

[1] *Hardt* involved an appeal from the United States Court of Appeals for the Fourth Circuit, which has analyzed attorney's fee applications under ERISA § 1132(g)(1) by applying factors nearly identical to those discussed in *Chambless*. *See, e.g., Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 (4th Cir.1993).

2011) (concluding that " 'some success on the merits' ... is all a fee claimant must show to be eligible to collect attorneys' fees.").

Applying this revised standard here, it is beyond dispute that plaintiffs have achieved a substantial measure of success on the merits in this action.  Simply stated, after protracted pretrial litigation, full trial on the merits, appeal, and hearing after remand on the calculation of damages, this court directed entry of judgment to reflect an overall award of damages to the Pension and Welfare Funds totaling $966,384.39.  *See* Item 280.  Having found the *Hardt* precondition satisfied, and considering the circumstances surrounding the contested nature of the fee application in this matter, the court also finds it appropriate to consider the *Chambless* factors for guidance in determining whether to grant the fee application.

        a.        *Degree of the Offending Party's Culpability or Bad Faith*

Based on the findings of both the trial and appellate courts in this case, there can be no question that defendant Santo Scrufari's conduct during his tenure as plan manager in awarding himself (and his son, Russell Scrufari) compensation without trustee approval constituted breach of fiduciary duty under ERISA, "the highest duty known to the law." *LaScala, et al. v. Scrufari*, 479 F.3d 213, 221 (2d Cir. 2007).  This liability was established by a preponderance of the evidence at trial showing defendant's longstanding history of self-dealing in defiance of his obligation to act solely in the interest of participants and beneficiaries of the Pension and Welfare Funds.  Accordingly, consideration of the degree of defendant's culpability weighs heavily in favor of granting plaintiffs' fee application.

   b.      *Ability of the Offending Party to Satisfy an Award of Attorney's Fees*

In his response to plaintiffs' fee application, defense counsel represents that his

client, a retiree on a fixed income of approximately $5,000 per month, is unable to satisfy

either the amount of the underlying judgment itself or an award of reasonable attorney's

fees for legal services performed on plaintiffs' behalf during the 16-plus years of litigation

it took to achieve that judgment.  The court notes that defendant has submitted no affidavit,

declaration, or other documentation as to his personal financial status.  In any event, the

equities of the case require the court to consider sources for satisfaction of the fee award

beyond the availability of defendant's personal assets.

First of all, as previously mentioned, plaintiffs seek to amend the judgment to reflect

an "offset" of the amount of damages to be paid to the Pension Fund against defendant's

pension benefits, as authorized by ERISA § 1056(d)(4).  This provision, adopted by

Congress in 1997, carves out an exception from the statute's general prohibition on

alienation of pension benefits, ERISA § 1056(d)(1),[2] to specifically allow for the set-off of

pension benefits in several specific situations, including when a civil judgment has been

entered by a court against a breaching fiduciary.  *See* 29 U.S.C. § 1056(d)(4)(A)(ii); *see*

*also Martorana v. Board of Trustees of Steamfitters Local Union 420 Health, Welfare and*

*Pension Fund*,  404 F.3d 797, 804 (3d Cir. 2005); *Coar v. Kazimir*, 990 F.2d 1413, 1420

(3d Cir.) (ERISA's anti-alienation provision does not preclude pension plan trustees from

---

[2]ERISA § 1056(d)(1) provides:

Each pension plan shall provide that benefits provided under the plan may not be
assigned or alienated.

29 U.S.C. § 1056(d)(1).

withholding breaching fiduciary's vested pension benefits as equitable set-off), *cert. denied*, 510 U.S. 862 (1993); *Brovarski v. Local 1205, Intern. Broth. of Teamsters Union, Pension Plan*, 1998 WL 765141, at *9 (E.D.N.Y. Feb. 23, 1998) ("Congress did not intend the anti-alienation clause to preclude an offset against the pension benefits of a breaching fiduciary.").

Upon review of the parties' (and the Empire Funds') submissions in this regard, plaintiffs' motion to amend the judgment is granted.  The court notes that defendant's objection to the motion is focused primarily on the concern that any offset against his pension benefits will appropriately account for the rights of his spouse to receive the joint survivor annuity to which she is entitled under the Pension Plan.  This concern is adequately addressed by the proposed amended judgment, which contains reference to ERISA's survivor annuity requirements.[3]

Second, the record indicates that Labor Management Trust Fiduciary Liability Policy No. 8127-92-16, issued to the predecessor Funds by the Federal Insurance Company (a division of the Chubb Group), provides $2,000,000.00 of insurance coverage for damages caused by a trustee's breach of fiduciary duty (*see* Item 288-2).[4]  The policy also contains

---

[3]The proposed language for the amendment to the order of judgment reads as follows:

The [$495,020.81] in total damages to the Pension Fund shall be offset to the extent possible against defendant's benefit under the Pension Fund in accordance with the provisions of 29 U.S.C. Section 1056(d)(4), preserving to the defendant's spouse the right to receive the survivor annuity under a qualified joint and survivor annuity as described in 29 U.S.C. Section 1056(d)(5).

Item 265-1, ¶ 9.

[4]"Insuring Clause 1" provides:

FIDUCIARY LIABILITY COVERAGE

an endorsement waiving any recourse of the carrier against defendant for the judgment

damages paid out on his behalf.  *See id.*, Endorsement No. 5.[5]  The court's reading of the

plain language of the policy and its endorsements suggests that a strong argument could

be made by defendant for recourse to the policy proceeds in satisfaction of not only the

judgment but also an award of attorney's fees.

In addition, ERISA § 1112[6] requires the Funds to obtain a surety bond to protect

against damages caused by plan officials' handling of the Funds' property.

Finally, as mentioned above, plaintiffs have moved pursuant to Fed. R. Civ. P. 21

and 19(a)(2) to join the Empire Funds as party defendants to this action so as to allow

"[r]ecourse to … the Funds or the Funds' ERISA Fidelity Bond or the Funds' insurance

---

The Company shall pay on behalf of the Insured all sums which any Insured shall become legally obligated to pay as damages on account of any claims first made against the Insured during the Policy Period as a result if any actual or alleged Breach of Fiduciary Duty committed by any Insured or by any other person for whom the Insured is legally responsible.

Item 288-2, p. 2.

[5]"Endorsement No. 5" provides:

In consideration of an additional premium it is agreed that the paragraph entitled Recourse if hereby deleted in its entirety.

Item 288-2, p. 12.  The "Recourse" provision of the policy states:

The Company has the right of full recourse against any Insured who commits a Breach of Fiduciary Duty.

*Id.* at p. 4.

[6]ERISA § 1112(a) provides that:

Every fiduciary of an employee benefit plan and every person who handles funds or other property of such a plan (hereafter in this section referred to as "plan official") shall be bonded as provided in this section ….

29 U.S.C. § 1112(a).

indemnification policy for liability for such attorneys' fees and expenses ...." Item 273-1, ¶ 11.[7] As explained at further length below, the court agrees that joinder of the Empire Funds is indeed appropriate and necessary at the final stage of this interminably longstanding litigation, not only to satisfy the fee award, but also to secure the judgment obtained for the Funds' benefit through counsel's efforts.

Accordingly, consideration of the equities regarding defendant's ability to satisfy an award of attorney's fees weighs strongly in favor of granting plaintiffs' application.

c.    *Whether an Award of Fees Would Deter Other Persons from Acting Similarly under like Circumstances*

This factor likewise weighs in favor of plaintiffs.   It is beyond dispute that a substantial award to compensate an attorney who pursued claims on behalf of the Funds over the course of nearly eighteen years through trial, successful appeal, and retrial on damages would act as a deterrence to current or future plan managers or other fiduciaries from attempting to divert fund assets for their personal benefit without trustee approval. In addition, as stated by the Second Circuit in the *Chambless* decision, "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights, even when small amounts are involved."  *Chambless*, 815 F.2d at 872. This "favorable slant toward ERISA plaintiffs is necessary to prevent the chilling of suits brought in good faith–the purpose of ERISA being to promote the interests of plan beneficiaries and allow them to enforce their statutory rights."  *Jones v. O'Higgins*, 736 F.

---

[7]Item 273-1, Mr. McCarthy's affirmation in support of plaintiffs' motion for joinder of the Empire Funds as defendants, contains two paragraphs numbered "11."  The language cited here is found in the second of those paragraphs.

Supp. 1243, 1245 (N.D.N.Y. 1990).  Clearly, requiring successful plaintiffs to pay their own fees when they win a highly contested multi-year struggle to recoup significant amounts wrongfully diverted from the Funds would likely deter other trustees, participants, or beneficiaries from pursuing private actions to protect their contractually defined benefits.

    d.    *Relative Merits of the Parties' Positions*

As reflected by the Second Circuit's February 2007 opinion in this matter, and as discussed above with respect to the threshold standard enunciated by the Supreme Court in *Hardt v. Reliance Standard Life Insurance Company*, consideration of the relative merits weighs decidedly in favor of granting plaintiffs' application.

    e.    *Whether the Action Conferred a Common Benefit on a Group of Pension Plan Participants*

Irrespective of the ability of the Funds to collect the damages and fees awarded, it cannot be disputed that the judgment entered in favor of plaintiffs in the total amount of nearly $1 million has conferred a common benefit on participants and beneficiaries of the Pension and Welfare Funds.

Accordingly, upon consideration of plaintiffs' substantial measure of success on the merits, and upon application of the *Chambless* factors, the court finds that the equities of the case justify an award of reasonable attorney's fees in favor of plaintiffs, pursuant to ERISA § 1132(g)(1).  The court now turns its attention to consideration of the reasonableness of the fee application.

The starting point for determining a reasonable attorney's fee in a statutory fee-shifting case is the determination of the "lodestar" amount, now characterized by the

Second Circuit as the "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008). The amount of the fee is calculated by multiplying a "reasonable hourly rate" by a "reasonable number of expended hours." *Finkel v. Omega Comm'n Services, Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y.2008) (citations omitted). "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged." *Id.* (citing generally *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir.1983)).

To determine reasonable hourly rates, courts in the Second Circuit ordinarily adhere to the "forum rule," described as "the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.' " *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984)). As explained further in *Gierlinger*, "in order to provide adequate compensation where the services were performed many years before the award is made, the rates used by the court to calculate the lodestar should be 'current rather than historic hourly rates.' " *Id.* (quoting *Missouri v. Jenkins*, 491 U.S. 274,  284 (1989) ("Clearly, compensation received several years after the services were rendered … is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings.")). In addition, courts will often look to the attorney's customary rate as a logical starting point for determining the reasonable hourly rate for purposes of a fee calculation. *See, e.g., Mugavero v. Arms Acres, Inc.*, 2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010) (citing cases).

In this case, plaintiffs submit that rate of $275 per hour is a reasonable rate of compensation for both Mr. McCarthy, as the attorney of record, and Mr. Herrmann, who provided counsel to Mr. McCarthy with respect to pension, trust, and ERISA law throughout the long course of the litigation as well as assistance with actuarial computations during the damages phase.  The court notes that defendant has not specifically objected to this proposed hourly rate.  Nor does defendant challenge the reasonableness of the hours spent by Mr. McCarthy; his representations as to his experience, reputation, and ability; or any of the other factors courts have taken into consideration when called upon to determine the reasonableness of the fee sought.  *Cf. Arbor Hill*, 522 F.3d at 186-87 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 96 (1989)).[8]  Accordingly, upon consideration of the circumstances presented on this application, the court finds that the proposed rate of $275 per hour is reasonable.  *Cf. Diamond "D" Const. Corp. v. New York State Dept. of Labor*, 2005 WL 2614955, at *4 (W.D.N.Y. Oct. 13, 2005) (accepting as reasonable hourly rate of $ 300 for local attorney of comparable skill, experience and reputation).

---

[8]The twelve *Johnson* factors are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186-87 (citing *Johnson*, 488 F.2d at 717-19).

Defendant does, however, object to the award of any fees for work performed by Mr. Herrmann.  This objection is based on the court's February 1994 ruling in this case disqualifying plaintiffs' former attorney, Norman LeBlanc, from representing plaintiffs due to a conflict of interest arising from his close professional association with Mr. Herrmann, who was then serving as legal counsel to the Funds in all matters other than this litigation. Specifically, the court found:

> Mr. Herrmann is not a disinterested attorney attempting to provide information in this case, but rather is an attorney whose partner, LeBlanc, is representing individual plaintiffs who are seeking to replace certain defendants from Union positions and from positions as officers of the Funds. Herrmann's past and present representation of the Funds is substantially related to this litigation, and the plaintiffs' interests are, at least arguably, materially adverse to the interests of Knapp and Scrufari as participants and beneficiaries.  In aligning himself with the plaintiffs, Herrmann, through his partner LeBlanc, may be improperly representing the interests of some of the Fund participants and beneficiaries against the interests of others.  As the Funds' attorney, Mr. Herrmann has a fiduciary responsibility to represent the interests of all the beneficiaries; and *neither he nor LeBlanc, his law partner, may ethically represent some beneficiaries against others in a matter that is inextricably linked to his role as legal counsel to the Funds*.

*Niagara-Genesee & Vicinity Carpenters Local 280 v. United Broth. of Carpenters and Joiners of America*, 843 F. Supp. 855, 857 (W.D.N.Y. 1994) (emphasis added).  According to defendant, the information contained in the billing records submitted in support of plaintiffs' fee application reveals Mr. Herrmann's continuous involvement in this case despite the clear conflict of interest ruled upon by the court, calling into question not only the compensability of that work but also the propriety of the fee application as a whole.

The court considered a similar argument made by defendant in connection with a previous motion to vacate the judgment pursuant to Fed. R. Civ. P. 60.  *See LaScala v. Scrufari*, 2011 WL 5864200, at 2-5 (W.D.N.Y. Nov. 22, 2011).  Defendant claimed that

plaintiffs' counsel fraudulently concealed Mr. Herrmann's performance of substantial legal services on behalf of plaintiffs, in the face of the court's disqualification ruling, warranting relief from the judgment.  The court found that the record did not contain clear and convincing evidence of fraud to justify the "extraordinary" relief from the judgment requested under Rule 60, since defense counsel had obtained actual knowledge of Mr. Herrmann's legal and actuarial work on behalf of plaintiffs several years prior to the filing of plaintiffs' fee application.  *Id.* at *5.

However, while defense counsel's actual knowledge of Mr. Herrmann's work on behalf of the plaintiffs may have obviated a finding of fraud in support of defendant's request for relief under Rule 60, it does not preclude a finding that this work was performed in derogation of the court's ruling that "neither [Herrmann] nor LeBlanc, his law partner, may ethically represent some beneficiaries against others in a matter that is inextricably linked to his role as legal counsel to the Funds." *Niagara-Genesee & Vicinity Carpenters Local 280*, 843 F. Supp. at 857.  There is nothing in the vast record before the court to distinguish Mr. Herrmann's "alignment" with the plaintiffs through his association with Mr. McCarthy from the similar alignment, through his partnership with Mr. LeBlanc, found by the court in its February 1994 disqualification ruling to suggest improper representation of the interests of some Fund participants and beneficiaries against the interests of others. Given the clear admonition of that ruling, Mr. Herrmann's work as legal and actuarial advisor in this matter must be considered to have been performed at his peril.  Accordingly, while the court does not view these circumstances as sufficient to call into question the overall propriety of plaintiffs' fee application, the court cannot equitably consider the hours

spent by Mr. Herrmann as either reasonable or necessary for the purpose of calculating

the amount of attorney's fees to be awarded to plaintiffs under ERISA § 1132(g)(1).

Turning to the contemporaneous time records submitted as Exhibit A to the attorney

affirmation in support of the fee application (Item 262-2), plaintiffs seek fees for work

performed by Mr. McCarthy from April 1994 (following Mr. LeBlanc's disqualification)

through April 2010 (for work related to calculating pre-judgment interest following entry of

judgment on damages).   The court notes that the hours are reported as annual totals, and

the fee amounts are discounted to reflect a percentage-based estimate of time spent

during the years 1994-1999 on "prevailing issues," as distinct from matters which did not

directly contribute to litigation of the cause of action for breach of fiduciary duty.

Based on these uncontested time records, and subtracting the hours reported for

Mr. Herrmann, the court makes the following calculations:

| | | |
|---|---|---|
| TM[9] hours reported for 1994: | 91.5 | |
| Hourly rate: | x   $275 | |
| | $25,162.50 | |
| Discounted to reflect 30% of time spent on prevailing issues: | x     .30 | |
| **1994 Subtotal**: | $7,548.75 | **$7,548.75** |
| | | |
| TM hours reported for 1995: | 28 | |
| Hourly rate: | x   $275 | |
| | $7,700 | |
| Discounted to reflect 50% of time spent on prevailing issues: | x     .50 | |
| **1995 Subtotal**: | **$3,850** | **$3,850.00** |

_____

[9]"TM" refers to Timothy McCarthy, Esq.

| | | |
|---|---:|---:|
| TM hours reported for 1996: | 3.5 | |
| Hourly rate: | x   $275 | |
| | $962.50 | |
| Discounted to reflect 50% of time spent on prevailing issues: | x     .50 | |
| **1996 Subtotal**: | **$481.25** | **$481.25** |

| | | |
|---|---:|---:|
| TM hours reported for 1997: | 15.75 | |
| Hourly rate: | x   $275 | |
| | $4,331.25 | |
| Discounted to reflect 50% of time spent on prevailing issues: | x     .50 | |
| | $2,165.63 | |

| | | |
|---|---:|---:|
| TM hours reported for 1997: | 14 | |
| Hourly rate: | x   $275 | |
| | $3,850 | |
| Discounted to reflect 75% of time spent on prevailing issues: | x     .75 | |
| | $2,887.50 | |

| | | |
|---|---:|---:|
| | $2,165.63 | |
| | + $2,887.50 | |
| **1997 Aggregate Subtotal**: | **$5,053.13** | **$5,053.13** |

| | | |
|---|---:|---:|
| TM hours reported for 1998: | 17.5 | |
| Hourly rate: | x   $275 | |
| | $4,812.50 | |
| Discounted to reflect 75% of time spent on prevailing issues: | x     .75 | |
| **1998 Subtotal**: | **$3,609.38** | **$3,609.38** |

| | | |
|---|---:|---:|
| TM hours reported for 1999: | 37.5 | |
| Hourly rate: | x   $275 | |
| | $10,312.50 | |
| Discounted to reflect 75% of time spent on prevailing issues: | x     .75 | |
| **1999 Subtotal**: | **$7,734.38** | **$7,734.38** |

| TM hours reported for 2000: | 17.5 | |
|---|---|---|
| Hourly rate: | x   $275 | |
| **2000 Subtotal**: | **$4,812.50** | **$4,812.50** |

| TM hours reported for 2001: | 63.75 | |
|---|---|---|
| Hourly rate: | x   $275 | |
| **2001 Subtotal**: | **$17,531.25** | **$17,531.25** |

| TM hours reported for 2002: | 146.25 | |
|---|---|---|
| Hourly rate: | x   $275 | |
| **2002 Subtotal**: | **$80,437.50** | **$80,437.50** |

| TM hours reported for 2003: | 52.75 | |
|---|---|---|
| Hourly rate: | x   $275 | |
| **2003 Subtotal**: | **$14,506.25** | **$14,506.25** |

| TM hours reported for 2004: | 134.25 | |
|---|---|---|
| Hourly rate: | x   $275 | |
| **2004 Subtotal**: | **$73,837.50** | **$73,837.50** |

| TM hours reported for 2005: | 62.75 | |
|---|---|---|
| Hourly rate: | x   $275 | |
| **2005 Subtotal**: | **$17,256.25** | **$17,256.25** |

| TM hours reported for 2006: | 325.25 | |
|---|---|---|
| Hourly rate: | x   $275 | |
| **2006 Subtotal**: | **$89,443.75** | **$89,443.75** |

| TM hours reported for 2007: | 117.50 | |
|---|---|---|
| Hourly rate: | x   $275 | |
| **2007 Subtotal**: | **$32,312.50** | **$32,312.50** |

| TM hours reported for 2008: | 84 | |
|---|---|---|
| Hourly rate: | x   $275 | |
| **2008 Subtotal**: | **$23,100** | **$23,100.00** |

| | | |
|---|---|---|
| TM hours reported for 2009: | 49.75 | |
| Hourly rate: | x   $275 | |
| **2009 Subtotal**: | **$13,681.25** | **$13,681.25** |

| | | |
|---|---|---|
| TM hours reported for 2010: | 14.25 | |
| Hourly rate: | x   $275 | |
| **2010 Subtotal**: | **$3,918.75** | **$3,918.75** |

| | **Total Fee:** | **$399,114.39** |
|---|---|---|

2.     **Plaintiffs' Cross-motion to Amend the Judgment**

In response to defendant's motion to amend the judgment to recalculate pre-judgment interest, plaintiffs asserted a cross-motion to amend the judgment in order to reflect the restoration of any profits realized by defendant on investments of Fund assets wrongfully obtained, citing ERISA § 1109(a).[10]  Plaintiffs concede they have not pursued this item of damages or submitted any proof in this regard, despite ample opportunity to do so during or subsequent to the November 2008 hearing after remand.   However, plaintiffs submit that, in lieu of supplemental discovery and a further hearing on this issue, the 9% simple interest the court previously charged for years after 2007 would be an appropriate measure of profits realized.  *See* Item 272-1 (McCarthy Aff.), ¶ 29.

_____

[10]This section provides:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. …

29 U.S.C. § 1109(a).

After this cross-motion was filed, the court issued its November 22, 2011 decision and order amending the judgment to reflect the adoption of plaintiffs' proposal to waive the claim for pre-judgment interest for the two-year period prior to entry of final judgment, as a reasonable compromise under the circumstances presented–including the reported negative annualized rates of return for that period.  *See LaScala v. Scrufari*, 2011 WL 5864200, at 11.  In light of this ruling, and in the absence of a showing of good cause to excuse the failure to present proof on the matter at any point throughout the course of this litigation, "the interests of finality" require the court to deny as moot plaintiffs' cross-motion for further amendment of the judgment.

**3.       Joinder of Empire Funds**

Finally, in an effort to secure a source for payment of the judgment and the award of attorney's fees, plaintiffs have moved pursuant Fed. R. Civ. P. 19(a)[11] to join the Empire Funds as party defendants.  Plaintiffs contend that jurisdiction over the Empire Funds is necessary and appropriate for a determination that the Funds, whose members are the beneficiaries of the judgment obtained, represent a "common fund" liable for the payment of attorney's fees and costs expended in their representative capacity, and for recourse to the proceeds of the fiduciary liability insurance policy and/or the fidelity bond required by statute for this purpose.

---

[11] Plaintiffs also seek joinder of the Empire Funds pursuant to Rule 21, which provides:

Misjoinder of parties is not a ground for dismissing an action.  On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

Fed. R. Civ. P. 21.

-18-

Rule 19(a) requires the court to join any person who is necessary to effect "complete relief among existing parties," where joinder is feasible. Fed. R. Civ. P. 19(a)(1); *Jota v. Texaco, Inc.*, 157 F.3d 153, 161 (2d Cir. 1998). Notably, the Empire Funds have not contested the feasibility of joinder. Rather, the Funds' objection to joinder is based primarily on this court's July 1, 2002 order dismissing the predecessor Funds from the case. *See* Item 168. In doing so, the court relied on precedent establishing that employee benefit plans are not proper defendants in an ERISA breach of fiduciary action. *Id.* at 10 (citing *Mertens v. Kaiser Steel Retirement Plan*, 744 F. Supp. 917 (N.D.Ca. 1990), *aff'd*, 948 F.2d 1105 (9th Cir. 1991)). This determination was grounded on the reasoning that, since the recovery of any damages resulting from defendant's breach of his fiduciary duties as plan manager would ultimately benefit the Funds, the Funds' interests could not be considered adverse to the interests of the plaintiffs for purposes of party alignment or conflict-free representation. *See id.* at 10-13.

However, a very different set of concerns are at issue now, at the post-judgment stage–namely, finding a source of funding to realize the benefits of this hard-fought litigation. The existence of a fiduciary liability policy and the prospect of a fidelity bond present the only real options for possible recovery of the judgment or the fee award, and the equitable circumstances dictate that those avenues should be pursued. *Cf. Rippey v. Denver U.S. Nat. Bank*, 42 F.R.D. 316, 319 (D.Colo. 1967) ("Equity acts in the present. A court which undertakes to do equity cannot suddenly become deaf to new developments which may bear upon its original purpose."); 7 CHARLES A. WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 1609 (3d ed.

2011) (court is free to reconsider previously decided question of a party's indispensability if there is a showing of changed circumstances).

With regard to the fiduciary liability policy, the Empire Funds assert in their response to the motion that "the information at hand" indicates that the insurance carrier has disclaimed coverage for satisfaction of the judgment or any award of attorneys' fees by virtue of a policy exclusion for intentional acts of fraud or embezzlement.[12]  Item 287, p. 2. However, in the absence of any disclaimer letter from the carrier or other documentation of record to substantiate this assertion, it must be deemed to be based upon information and belief.  As such, it is insufficient to offset plaintiffs' reliance on the plain language of "Insuring Clause 1" and "Endorsement No. 5," set forth at footnotes 4 and 5 *supra*.

Accordingly, the court finds that the equities presented at this post-judgment stage of the proceedings require granting plaintiffs' application for joinder of the Empire Funds as a person necessary to "accord complete relief among the existing parties" pursuant to Fed. R. Civ. P. 19(a)(1)(A), to be aligned as a defendant for the limited purpose of standing in the place and stead of the predecessor Funds as  the insured under Labor Management Trust Fiduciary Liability Policy No. 8127-92-16, and/or as the beneficiary of the fidelity bond

---

[12]Specifically, the "Policy Exclusions" provide:

   The Company shall not be liable to make any payment under this policy in connection with any claim made against the Insured:
   ...
   (2)      arising out of any dishonest, fraudulent or criminal act or willful violation of any statute, provided that this exclusion shall not apply unless a judgment or other final adjudication shall establish that such act or violation was in fact committed and was material to the cause of action so adjudicated.

Item 288-2, p. 2.

required by ERISA § 1112(a) (to the extent one is required beyond the coverage provided by the fiduciary liability policy).

## **CONCLUSION**

Based on the foregoing, and to the extent discussed herein, the following is ordered:

1.      Plaintiffs' motion pursuant to ERISA § 1132(g)(1) (Item 262) is granted in the amount of $399,114.39 in attorney's fees, and disbursements in the amount of $12,757.07, for a total award of $411,871.46.

2.      Plaintiff's motion to amend the judgment to reflect an "offset" of the amount of damages to be paid to the Pension Fund against defendant's pension benefits (Item 265) is granted.  The Clerk of the Court is directed to amend the judgment to add the following language:

> The $495,020.81 in total damages to the Pension Fund shall be offset to the extent possible against defendant's benefit under the Pension Fund in accordance with the provisions of 29 U.S.C. § 1056(d)(4), preserving to the defendant's spouse the right to receive the survivor annuity under a qualified joint and survivor annuity as described in 29 U.S.C. § 1056(d)(5).

3.      Plaintiff's cross-motion to amend the judgment in order to reflect the restoration of any profits realized by defendant on investments of Fund assets wrongfully obtained (Item 272) is denied as moot.

4.      Plaintiffs' motion for joinder (Item 273) is granted for purpose of adding the Empire Funds to the action as person necessary to accord complete relief among the existing parties, pursuant to Fed. R. Civ. P. 19(a)(1)(A), to be aligned as a party defendant for the limited purposes described herein.

-21-

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   3/9                , 2012
p:\pending\1993\93-982.feb21.2012